IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EXELIXIS, INC.,                                    )
                                                   )
                    Plaintiff,                     )
                                                   )
        v.                                         )   C.A. No.  _____
                                                   )
HANDA PHARMACEUTICALS, INC.,                       )
HANDA PHARMA, INC., AND                            )
HANDA ONCOLOGY, LLC,                               )
                                                   )
                    Defendants.                    )

## COMPLAINT FOR PATENT INFRINGEMENT

1.      This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 100 et seq., as well as the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, against Defendants Handa Pharmaceuticals, Inc. ("Handa Pharmaceuticals"), Handa Pharma, Inc. ("Handa Pharma"), and Handa Oncology, LLC ("Handa LLC") (collectively, "Defendants" or "Handa"). This action arises out of Handa LLC's submission, pursuant to § 505(b)(2) of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 355(b)(2), of 505(b)(2) New Drug Application No. 220613 ("505(b)(2) NDA") to the U.S. Food and Drug Administration ("FDA"), seeking approval to manufacture and sell cabozantinib capsules (the "Handa Cabozantinib Product") prior to the expiration of U.S. Patent Nos. 9,174,947; 9,365,516; 9,969,692; 10,123,999; and 10,736,886 (collectively, the "Asserted Patents").

## PARTIES

2.      Plaintiff Exelixis, Inc. ("Exelixis") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1851 Harbor Bay Parkway, Alameda, California 94502. Exelixis is engaged in the business of creating, developing, and bringing to market new medicines for difficult-to-treat cancers.

3.      Exelixis sells CABOMETYX® throughout the United States, including in Delaware.  CABOMETYX® is an oral drug product (tablets) containing the active ingredient cabozantinib (L)-malate.  CABOMETYX®, which was initially approved by the FDA on April 25, 2016, is now indicated for the treatment of (i) patients with advanced renal cell carcinoma (RCC); (ii) patients with advanced renal cell carcinoma, as a first-line treatment in combination with nivolumab; (iii) patients with hepatocellular carcinoma (HCC) who have been previously treated with sorafenib; (iv) adult and pediatric patients 12 years of age and older with locally advanced or metastatic differentiated thyroid cancer (DTC) that has progressed following prior VEGFR-targeted therapy and who are radioactive iodine-refractory or ineligible; (v) adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated pancreatic neuroendocrine tumors (pNET); and (vi) adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated extra-pancreatic neuroendocrine tumors (epNET).

4.      Upon information and belief, Handa Pharmaceuticals is a corporation organized and existing under the laws of Taiwan, having a principal place of business at 3F-1&3F-2, No.23, Nanke 3rd Rd., Xinshi Dist., Tainan City 744094, Taiwan.

5.      Upon information and belief, Handa Pharmaceuticals is in the business of, among other things, developing, manufacturing, and selling pharmaceutical drug products for distribution in the United States market, including in this judicial district, through various directly or indirectly owned operating subsidiaries, including Handa Pharma and Handa LLC.

6.      Upon information and belief, Handa Pharma is a corporation organized and existing under the laws of Delaware, having a principal place of business at 2025 Gateway Place Suite 480, San Jose, CA 95110.

7.      Upon information and belief, Handa Pharma is a wholly-owned subsidiary of Handa Pharmaceuticals and is controlled and/or dominated by Handa Pharmaceuticals.  Upon information and belief, Handa Pharma manufactures, distributes and/or imports pharmaceutical drug products for sale throughout the United States, including in Delaware, at the direction, under the control, and for the direct benefit of its parent company, Handa Pharmaceuticals.  Upon information and belief, Handa Pharmaceuticals established Handa Pharma for the purposes of manufacturing, distributing, marketing, offering for sale and/or selling their drug products throughout the United States, including in this judicial district.

8.      Upon information and belief, Handa LLC is an entity organized and existing under the laws of California, having a principal place of business at 2025 Gateway Place Suite 480, San Jose, CA 95110.

9.      Upon information and belief, Handa LLC is a wholly-owned subsidiary of Handa Pharma and is controlled and/or dominated by Handa Pharmaceuticals and Handa Pharma.  Upon information and belief, Handa LLC manufactures, distributes and/or imports generic drugs for sale throughout the United States, including in Delaware, at the direction, under the control, and for the direct benefit of its parent companies, Handa Pharma and Handa Pharmaceuticals.  Upon information and belief, Handa Pharmaceuticals and/or Handa Pharma established Handa LLC for the purposes of manufacturing, distributing, marketing, offering for sale and/or selling their drug products throughout the United States, including in this judicial district.

10.     Upon information and belief, Defendants are intertwined and collaborate in the manufacture and importation of pharmaceutical products (including generic drug products manufactured and sold pursuant to regulatory approval), as well as the marketing or sale of such pharmaceutical products throughout the United States, including in Delaware.  For example, upon

information and belief, Handa Pharmaceuticals serves as Handa's headquarters and global research and development ("R&D") center, while Handa Pharma is responsible for business development, intellectual property, and regulatory affairs, and Handa LLC is responsible for all business related to its oncology drugs.  Upon information and belief, Handa's overall business strategy includes using Handa Pharmaceuticals, its Taiwan headquarters, as its global R&D center and establishing its presence in the U.S. market through its U.S. subsidiaries, Handa Pharma and Handa LLC.  Upon information and belief, Dr. Fang-yu ("Bill") Liu is the founder, President, and Chairman of the Board of Directors of Handa Pharmaceuticals, as well as the President of Handa Pharma and the Chief Executive Officer of Handa LLC.

11.    Upon information and belief, Defendants acted collaboratively in the preparation and submission of 505(b)(2) NDA No. 220613.

12.    Upon information and belief, Handa LLC's preparation and submission of its 505(b)(2) NDA to the FDA was done at the direction, under the control, and for the benefit of Handa Pharmaceuticals and Handa Pharma.  For example, Handa Pharmaceuticals maintains a website, www.handapharma.com.tw, representing that "[t]he company's business strategy comprises of utilizing our Taiwan headquarters as our global R&D center and establishing our presence in the world's two largest pharmaceutical markets (the US and China)." [1]  Handa Pharmaceuticals' website specifically identifies HND-039, Handa's Cabozantinib Product, as one of its 505(b)(2) drug products that is under FDA review.   Handa Pharma has also held itself out as the "developer/owner of cabozantinib alternate-salt capsule formulation"[2] in a poster presented

---

[1] *See* Handa Pharma, About Handa, https://handapharma.com.tw/about-en/company/.
[2] Jaymes Holland et al., Abstract 524714: A Novel Cabozantinib Alternate-Salt Capsule Formulation: Bioequivalent Exposure and Reduce PK Variability with Model-Informed Treatment Continuity Assessments in Renal Cell Carcinoma, poster presented at ASCO Genitourinary Cancers Symposium, February 2026.

at the ASCO Genitourinary Cancers Symposium.  On information and belief, Handa Pharma's statement is in reference to Handa's Cabozantinib Product.

13.    Upon information and belief, following any FDA approval of its 505(b)(2) NDA, Handa Pharmaceuticals, Handa Pharma, and Handa LLC will work in concert with one another to make, use, offer to sell, and/or sell the Handa Cabozantinib Product that is the subject of Handa's 505(b)(2) NDA throughout the United States, including in Delaware, and/or import such products into the United States, including into Delaware.

## JURISDICTION AND VENUE

14.    This case arises under the patent laws of the United States of America, 35 U.S.C. §§ 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

15.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

16.    This Court has personal jurisdiction over Handa because, among other things, Handa has committed, aided, abetted, contributed to, and/or participated in an act of patent infringement under 35 U.S.C. § 271(g) and/or intends to engage in a future course of conduct that includes acts of patent infringement under 35 U.S.C. § 271(g), including in Delaware.  These acts have led and will lead to foreseeable harm and injury to Exelixis, a Delaware corporation, in Delaware.  For example, on information and belief, if the 505(b)(2) NDA is approved, Handa intends to manufacture, use, import, sell, and/or offer for sale the Handa Cabozantinib Product in the United States, including in Delaware, prior to the expiration of the Asserted Patents.

17.    The Court also has personal jurisdiction over Handa because, among other things, this action arises from Handa's actions directed toward Delaware, and because Handa has purposefully availed itself of the rights and benefits of Delaware law by engaging in systematic and continuous contacts with Delaware, including through Handa Pharma.

18. This Court has personal jurisdiction over Handa Pharmaceuticals, Handa Pharma, and Handa LLC because, upon information and belief, Handa Pharmaceuticals, Handa Pharma, and Handa LLC currently manufacture and distribute drug products for sale throughout the United States, including in Delaware.

19. This Court also has personal jurisdiction over Handa Pharma by virtue of, among other things, the fact that Handa Pharma is organized and exists under the laws of the State of Delaware.

20. Handa Pharmaceuticals and Handa Pharma have previously availed themselves of this forum by affirmatively filing responsive pleadings and motions in other actions before this Court, including *Novartis Pharmaceuticals Corporation v. Handa Neuroscience, LLC et al*, 1:22-cv-00352 (D. Del) and *Novartis Pharmaceuticals Corporation v. Handa Neuroscience, LLC et al*, 1:21-cv-00645 (D. Del).

21. On information and belief, Handa Pharmaceuticals' contacts with other states of the United States are no greater than its contacts with Delaware. Therefore, to the extent Handa Pharmaceuticals denies that this Court has personal jurisdiction over them because of a purported lack of systematic and continuous contacts with Delaware, this Court has personal jurisdiction over Handa Pharma pursuant to Federal Rule of Civil Procedure 4(k)(2)(A).

22. Venue is proper in this Court under 28 U.S.C. § 1381(b)(1) and 28 U.S.C. § 1400(b) because Handa Pharma is incorporated under the state laws of Delaware and therefore resides in the District of Delaware.

23. Venue is also proper in this Court under 28 U.S.C. § 1391(c)(3) because Handa Pharmaceuticals is not a resident of the United States and may thus be sued in any judicial district.

## BACKGROUND

## ASSERTED PATENTS

24.     Exelixis sells and manufactures its blockbuster drug, CABOMETYX® (cabozantinib), which is a tyrosine kinase inhibitor for oral administration approved by the FDA for the treatment of patients with advanced kidney cancer (renal cell carcinoma) as a monotherapy and in combination with nivolumab.  It is also approved to treat patients with liver cancer (hepatocellular carcinoma) who have been previously treated with the medicine sorafenib; adult and pediatric patients 12 years of age and older with locally advanced or metastatic thyroid cancer (differentiated thyroid cancer) that has progressed following prior VEGFR-targeted therapy and who are radioactive iodine-refractory or ineligible; adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated pancreatic neuroendocrine tumors (pNET); and adult and pediatric patients 12 years of age and older with previously treated, unresectable, locally advanced or metastatic, well-differentiated extra-pancreatic neuroendocrine tumors (epNET).  Exelixis sells CABOMETYX® in the United States pursuant to New Drug Application No. 208692, which was originally approved by the FDA in 2016.

25.     In its development of CABOMETYX®, Exelixis has obtained several patents directed to innovative products, methods, and processes related to the manufacturing and production of cabozantinib and cabozantinib (L)-malate, the active ingredient in CABOMETYX®. Among those patents are the Asserted Patents: U.S. Patent No. 9,174,947 ("the '947 Patent"), U.S. Patent No. 9,365,516 ("the '516 Patent"), U.S. Patent No. 9,969,692 ("the '692 Patent"), U.S. Patent No. 10,123,999 ("the '999 Patent"), and U.S. Patent No. 10,736,886 ("the '886 Patent").

26.     The '947 Patent (Exhibit A), titled "c-MET modulators and methods of use," was duly and legally issued by the U.S. Patent and Trademark Office on November 3, 2015.  The '947

Patent will expire on March 4, 2030. The claims of the '947 Patent are valid, enforceable, and not expired. All rights and interests in the '947 Patent are owned by and assigned to Exelixis.

27.   The '516 Patent (Exhibit B), titled "Process for preparing quinoline derivatives," was duly and legally issued by the U.S. Patent and Trademark Office on June 14, 2016. The '516 Patent will expire on October 22, 2032. The claims of the '516 Patent are valid, enforceable, and not expired. All rights and interests in the '516 Patent are owned by and assigned to Exelixis.

28.   The '692 Patent (Exhibit C), titled "Process for preparing quinoline derivatives," was duly and legally issued by the U.S. Patent and Trademark Office on May 15, 2018. The '692 Patent will expire on October 22, 2032. The claims of the '692 Patent are valid, enforceable, and not expired. All rights and interests in the '692 Patent are owned by and assigned to Exelixis.

29.   The '999 Patent (Exhibit D), titled "Processes for preparing quinoline compounds and pharmaceutical compositions containing such compounds," was duly and legally issued by the U.S. Patent and Trademark Office on November 13, 2018. The '999 Patent will expire on February 10, 2032. The claims of the '999 Patent are valid, enforceable, and not expired. All rights and interests in the '999 Patent are owned by and assigned to Exelixis.

30.   The '886 Patent (Exhibit E), titled "Methods of using c-MET modulators," was duly and legally issued by the U.S. Patent and Trademark Office on August 11, 2020. The '886 Patent will expire on August 6, 2030. The claims of the '886 Patent are valid, enforceable, and not expired. All rights and interests in the '886 Patent are owned by and assigned to Exelixis.

31.   The '947 Patent, '516 Patent, '692 Patent, '999 Patent, and '886 Patent are process patents. The '947 Patent and '516 Patent claim processes for manufacturing cabozantinib. The '692 Patent, '999 Patent, and '886 Patent claim processes for manufacturing cabozantinib and cabozantinib (L)-malate.

8

32.     Because the Asserted Patents are process patents, they cannot be listed in connection with CABOMETYX® in the FDA's publication Approved Drug Products with Therapeutic Equivalence Evaluations, referred to as the "Orange Book."

**HANDA'S PARAGRAPH IV NOTICE LETTER AND CABOZANTINIB PRODUCT**

33.     Upon information and belief, Handa submitted its 505(b)(2) NDA to the FDA on September 29, 2025.[3]  By letter dated November 25, 2025 (the "Notice Letter"), Handa notified Exelixis that Handa submitted its 505(b)(2) NDA to the FDA.

34.     Upon information and belief, Handa intends to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of the Handa Cabozantinib Product immediately and imminently upon FDA approval of its 505(b)(2) NDA.

35.     In Handa's November 25, 2025 Notice Letter, Handa notified Exelixis that it had submitted a 505(b)(2) NDA application to the FDA for cabozantinib capsules, 11.5 mg, 23 mg, 34.5 mg.

36.     In its Notice Letter, Handa stated that its 505(b)(2) NDA included a Paragraph IV certification pursuant to § 505(b)(2)(A)(iv) of the Federal Food, Drug, and Cosmetic Act, codified at 21 U.S.C. § 355(b)(2), and 21 C.F.R. § 314.50(i)(1)(i)(A)(4) with respect to U.S. Patent Nos. 8,877,776; 9,724,342; 10,034,873; 10,039,757; 11,091,439; 11,091,440; 11,098,015; 11,298,349 and 12,128,039 and alleged that these patents are "invalid and/or will not be infringed by the commercial manufacture, use or sale of" the Handa Cabozantinib Product.  The Notice Letter informed Exelixis that Handa seeks approval to engage in the commercial manufacture, use, sale, offer for sale, and/or importation of the Handa Cabozantinib Product before the patents listed in

---

[3] Handa Pharmaceuticals Submits FDA New Drug Application for Cancer 505(b)(2) Candidate HND-039, Oct. 2, 2025, https://www.taiwan-healthcare.org/en/news-detail?id=0t3hby15q1dz063r.

the Paragraph IV certification expire, beginning on January 15, 2030, and consequently before the Asserted Patents expire, beginning on March 4, 2030.

37.     In its 505(b)(2) NDA submission, and as stated in Handa's Notice Letter, Handa represented to the FDA and to Exelixis that its Cabozantinib Product containing the active ingredient cabozantinib is bioequivalent to CABOMETYX®.  In the Notice Letter, Handa advised Exelixis that (1) the active ingredient in Handa's Cabozantinib Product is "cabozantinib in the form of cabozantinib lauryl sulfate" and (2) "the dosage form is a capsule that will be sold in 11.5 mg, 23 mg and 34.5 mg strengths of cabozantinib in the form of cabozantinib lauryl sulfate."

38.     Upon information and belief, Handa and/or its agents manufacture cabozantinib and/or cabozantinib (L)-malate, for preparing the active ingredient in Handa's Cabozantinib Product, according to processes claimed by the Asserted Patents.

39.     Upon information and belief, Handa's Cabozantinib Product, and the manufacture, use, sale, offer for sale, and/or importation thereof, infringes Exelixis' process patents because it is manufactured according to processes that are claimed by Exelixis' Asserted Patents.  For example, based on publicly available information, Exelixis has a good faith basis to believe that the cabozantinib in Handa's Cabozantinib Product, is manufactured by the process described in Example 2 and/or Example 41 of Handa's U.S. Patent No. 12,064,430 (the "Handa Publication"), titled "Kinase Inhibitors Salts and Compositions Thereof."  Example 2 of the Handa Publication describes a process to make cabozantinib lauryl sulfate from cabozantinib.  Example 41 of the Handa Publication describes a process to make cabozantinib lauryl sulfate from cabozantinib (L)-malate.  To the extent Handa manufactures cabozantinib or cabozantinib (L)-malate for input into the Handa Cabozantinib Product using the processes disclosed in Example 2 and/or Example 41 of the Handa Publication, then Handa may use the claimed processes of the Asserted Patents.

Handa has not denied that the Handa Cabozantinib Product is manufactured using the process disclosed in Example 2 and/or Example 41 of the Handa Publication, despite being given the opportunity to do so.

40.    Moreover, upon information and belief, the product of the patented processes of the Asserted Patents is then incorporated into Handa's Cabozantinib Product and is not materially changed by subsequent processes, nor is it a trivial and nonessential component of another product, at least because the cabozantinib component of Handa's Cabozantinib Product is what provides its purported biological or therapeutic effect in vivo, not the subsequent formation of the lauryl sulfate salt or formulation into a capsule.

41.    Finally, and as further discussed below, Exelixis has made substantial efforts to obtain information from Handa regarding the manufacturing process for its Cabozantinib Product to confirm Exelixis' good faith belief.  Handa has not denied that the Handa Publication and the processes disclosed therein cover the manufacturing of Handa's Cabozantinib Product.  Nor has Handa denied that it infringes the Asserted Patents.

**NEGOTIATIONS REGARDING CONFIDENTIAL ACCESS TO HANDA'S
MANUFACTURING PROCESS FOR CABOZANTINIB**

42.    Exelixis has made several attempts to obtain non-public information regarding the manufacturing processes for making the cabozantinib active ingredient used in the Handa Cabozantinib Product, all to no avail.

43.    After receiving the Notice Letter on November 26, 2025, Exelixis acknowledged receipt of Handa's Notice Letter and accompanying Offer of Confidential Access ("OCA") on December 23, 2025.  Exelixis proposed revisions to the OCA.

44.    On December 27, 2025, Handa responded that it would accept certain of Exelixis' proposed revisions but refused to permit Exelixis to use Handa's confidential information to

evaluate infringement of patents not listed in the Orange Book—such as the Asserted Patents, which are process patents and cannot be listed in the Orange Book.

45.     On December 29, 2025, Exelixis requested that Handa provide any counterproposal that would enable Exelixis to meaningfully investigate potential infringement of its non-Orange Book-listed patents.  Later that same day, Handa categorically refused, asserting that Exelixis had no right to access confidential information for such purposes.

46.     In an effort to move discussions forward, and in light of Handa's position that access might be considered outside the OCA process, Exelixis provided Handa with a proposed standalone confidentiality agreement that would permit review of relevant information to evaluate infringement of additional patents.

47.     On January 8, 2026, Handa indicated that it would be willing to consider providing certain information under a separate confidentiality agreement and represented that it would provide revisions to Exelixis' draft confidentiality agreement.  Despite that offer, Handa did not provide those revisions or a separate confidentiality agreement.

48.     After Handa's failure to respond with its revisions, Exelixis followed up on January 16, 2026, and again on February 5, 2026.  On February 5, 2026, Handa represented that it would provide revisions in the following week.

49.     Handa once again failed to meet its own self-imposed deadline.  After an additional follow-up from Exelixis on February 20, 2026, Handa finally provided revisions to the confidentiality agreement on February 26, 2026.

50.     On March 31, 2026, Exelixis responded with further proposed revisions and made itself available to meet and confer to resolve outstanding issues.  Handa did not respond.

51.     On April 15, 2026, Exelixis again followed up and offered to schedule a call to address any remaining issues. To facilitate resolution, Exelixis also identified the Asserted Patents and explained that the limited publicly available information regarding Handa's manufacturing processes supports Exelixis' allegation that Handa's manufacture, use, offer for sale, sale, and/or importation of its proposed Cabozantinib Product will infringe one or more of Exelixis' process patents.  Exelixis explained how the Handa Publication describes two manufacturing methods that use cabozantinib (L)-malate or cabozantinib to produce cabozantinib lauryl sulfate, the active ingredient in Handa's Cabozantinib Product. Therefore, based on this disclosure, Exelixis explained that it had a good faith basis to believe that Handa's manufacture of its proposed Cabozantinib Product infringes Exelixis' Asserted Patents.  Exelixis also explained that additional details concerning the manufacturing process for Handa's Cabozantinib Product are not publicly available and are not reasonably accessible to Exelixis at this time due to Handa's unwillingness to enter into a confidentiality agreement.

52.     On April 28, 2026, instead of providing a counterproposal or agreeing to meet and confer with Exelixis over any remaining disputes, Handa summarily rejected Exelixis' proposed revisions and refused to provide access to the requested confidential information.

53.     Handa had knowledge of the Asserted Patents at least as of April 15, 2026, when Exelixis identified the Asserted Patents to Handa during negotiations for confidential access to Handa's 505(b)(2) NDA.  Negotiations were unsuccessful and Handa has refused to provide Exelixis access to Handa's 505(b)(2) NDA.

54.     In its April 28, 2026 correspondence to Exelixis, Handa acknowledged that Exelixis' infringement allegations were based, in part, on the manufacturing processes described in the Handa Publication.  Handa, however, did not substantively address the Handa Publication

13

or deny that Handa employs the processes disclosed therein. Instead, Handa redirected the discussion to a different publication—WO 2024/163400 ("WO'400"). Specifically, Handa, in citing WO'400 at Example 24, claims that WO'400 discloses a linear process for making cabozantinib that differs from the convergent process claimed in the Asserted Patents. Handa did not assert that it utilized the WO'400 process in connection with manufacturing the Handa Cabozantinib Product. Nor did Handa deny that it uses the Handa Publication processes for manufacturing its Handa Cabozantinib Product. Nor did Handa deny that it manufactures cabozantinib or cabozantinib (L)-malate using the claimed processes of the Asserted Patents.

55.    Exelixis has made substantial and reasonable efforts to confirm the process used to manufacture the Handa Cabozantinib Product. Exelixis researched publicly available sources (e.g., scientific literature, clinical trial databases, patent filings, and Handa's website), identifying the Handa Publication in the process. Exelixis repeatedly sought access to Handa's 505(b)(2) NDA and other non-public documents relating to the Handa Cabozantinib Product, but Handa refused, despite Exelixis' willingness to enter into a confidentiality agreement.

56.    As of the filing of this Complaint, Exelixis does not have, and has not had, access to Handa's 505(b)(2) NDA or other non-public information about Handa's manufacturing or importing of Handa's Cabozantinib Product. As a result, Exelixis' infringement allegations are premised on publicly available information.

### HANDA'S IMMINENT LAUNCH OF ITS CABOZANTINIB PRODUCT

57.    Through its public statements, submission of the 505(b)(2) NDA, and in its Notice Letter, Handa has made clear it intends to market, commercialize, and sell its Cabozantinib Product

in the United States immediately upon FDA approval, which may be as early as late July or August 2026.

58.     In public announcements on its websites and to the press, Handa has stated that the FDA has been substantively reviewing Handa's 505(b)(2) NDA for the Handa Cabozantinib Product since approximately November 2025.  In the same public announcement, Handa also disclosed that the FDA has set a Prescription Drug User Fee Act ("PDUFA") date in late July or August 2026 for Handa's 505(b)(2) NDA, which represents the deadline for the agency to complete its review of Handa's 505(b)(2) NDA and determine whether to approve the application. *See* Announcement on Behalf of Subsidiary Handa Oncology: U.S. FDA Notifies That the 505(b)(2) New Drug Application for Cancer Treatment HND-039 Has Entered Substantive Review, with a Target Review Completion Date of July 29, 2026 (U.S. Time), BigGo Fin. (Nov. 19, 2025), https://finance.biggo.com/news/tpex_major_6620_1141119_172918_1.

59.     According to public reports, Handa's Chairman and CEO, Dr. Liu, "announced after the company's shareholder meeting that the U.S. FDA has set a July 29 target date for its review of [the Handa Cabozantinib Product] and has already notified the company of a facility inspection."[4]

60.     Upon FDA approval of Handa's 505(b)(2) NDA, which will be as early as late July or August 2026, Handa will be able to commercialize and market its infringing Cabozantinib Product.  Handa has made its intentions to do so clear.  For example, Handa has announced that it is "planning to build a roughly 16-person sales team in the U.S." and "has already begun U.S.

---

[4] Handa Pharma Nears FDA Approval for Multi-Target Cancer Drug, Plans 16-Person U.S. Sales Team to Target $2.1 Billion Market, BigGo Fin., https://finance.biggo.com/news/143ba4e7-dc98-41b6-9e33-9b155001f445 (last visited June 25, 2026).

market preparations, including engaging key opinion leaders, studying oncology drug distribution channels, and planning for market access and sales force deployment."[5]

61.    Further, in business communications between Handa and Exelixis, Dr. Liu expressly stated that Handa would "continue to prepare for the launch of Omzify and a comparator clinical trial in [renal cell carcinoma] patients."  Upon information and belief, "Omzify" refers to Handa's Cabozantinib Product.

62.    Handa's express statements regarding its ongoing launch preparations demonstrate Handa's intent to commercially market its product in the United States immediately upon FDA approval.

63.    Handa has undertaken other activities to support the anticipated launch of its Cabozantinib Product, including conducting studies designed to position that product in the marketplace.  For example, Handa has publicly disclosed that it conducted pharmacokinetic, dose tolerability, and safety studies in animals to compare the safety and tolerability of CABOMETYX® with its cabozantinib product, HND-039, and to evaluate HND-039's potential for clinical development.[6]  On its website, Handa also describes the "potential market" for its HND-039 cabozantinib product in comparison to CABOMETYX®, which it describes as having a "significant potential market."[7]

64.    Handa additionally presented the results of a bioequivalence simulation study, comparing its Cabozantinib Product to CABOMETYX®, at the American Society of Clinical

---

[5] Handa Pharma Nears FDA Approval for Multi-Target Cancer Drug, Plans 16-Person U.S. Sales Team to Target $2.1 Billion Market, BigGo Fin., https://finance.biggo.com/news/143ba4e7-dc98-41b6-9e33-9b155001f445 (last visited June 25, 2026).

[6] See Shangwei Qin et al., A Novel Cabozantinib Formulation with Improved Safety and Bioavailability: Preclinical Validation in Rats, Cancer Chemotherapy & Pharmacol. 26 (Mar. 14, 2026).

[7] "HND-039," Handa Pharma, https://handapharma.com.tw/r%ef%bc%86d/hnd-039/.

Oncology Genitourinary Cancers Symposium ("ASCO GU") in February 2026.  In its presentation at the ASCO GU Symposium in February 2026, which Handa describes on its website's "History" page, [8] Handa's poster (Exhibit F) describes Handa Pharma as the "developer/owner of cabozantinib alternate-salt capsule formulation."

65.    Handa also published a corresponding ASCO Meeting Abstract (Exhibit G) in connection with its presentation at the 2026 ASCO GU Symposium in the Journal of Clinical Oncology.  In its abstract, Handa again identifies the research as funded and sponsored by Handa Pharma.  Together, these disclosures further support that Handa undertook these research efforts to support the development and commercial positioning of its Cabozantinib Product for launch upon FDA approval.

66.    Handa has also publicized its intentions to advance the Handa Cabozantinib Product toward commercialization by progressing its research and development from preclinical trials into human clinical development.  In a March 2026 publication in Cancer Chemotherapy and Pharmacology authored by researchers employed or affiliated with Handa Pharmaceuticals, the authors report the results of Handa's preclinical studies of HND-039.  The publication expressly concludes that "[t]hese preclinical findings suggest that HND-039 is a promising candidate for further clinical development.  If confirmed in human trials, its improved GI tolerability and bioavailability might offer substantial patient benefits in chronic cabozantinib therapy."[9]  Handa's forward-looking statements in its publication and comparisons to the reference listed drug

---

[8] "About Us: History and Milestones," Handa Pharma, https://handapharma.com.tw/about-en/history/.
[9] Shangwei Qin et al., A Novel Cabozantinib Formulation with Improved Safety and Bioavailability: Preclinical Validation in Rats, Cancer Chemotherapy & Pharmacol. 26 (Mar. 14, 2026).

CABOMETYX® underscore Handa's efforts to market its product in anticipation of commercial launch upon FDA approval.

67.    While Exelixis has attempted to inquire further into Handa's manufacturing processes, Handa has prevented Exelixis from accessing such information by refusing to engage with Exelixis and negotiate a reasonable confidentiality agreement.    Exelixis is therefore compelled to bring this action based on publicly available information and the limited disclosures Handa has made to-date, all of which underscore Handa's intent to commercialize and market its infringing cabozantinib product imminently upon FDA approval, as soon as late July or August 2026.

## CLAIMS FOR RELIEF
### COUNT 1: DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,174,947

68.    Exelixis incorporates each of the preceding paragraphs 1-67 as if fully set forth herein.

69.    On information and belief, upon FDA approval of 505(b)(2) NDA, Handa's importation into the U.S. of the Handa Cabozantinib Product and/or its active ingredient, and/or Handa's offering to sell, selling, and/or using the Handa Cabozantinib Product and/or its active ingredient within the U.S., prior to expiration of the '947 Patent, would infringe at least claims 1-5 of the '947 Patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

70.    On information and belief, such infringement is imminent because, among other things, Handa has notified Exelixis of the submission of its 505(b)(2) NDA, which seeks FDA approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product before the expiration of the '947 Patent.

71.     Exelixis timely gave Handa actual notice of the '947 patent and has sought information that would assist Exelixis in confirming whether Handa's Cabozantinib Product is produced by a process within the lawful scope of at least claims 1-5 of the '947 patent.  Handa has not provided this information.  In the absence of such information, Exelixis resorts to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm Exelixis' belief that Handa is engaged in such infringement.

72.     Based on publicly available information and Exelixis' reasonable investigation, to the extent that the Handa Cabozantinib Product is made according to the manufacturing process described in Example 2 of the Handa Publication, then Handa may infringe at least claims 1-5 of the '947 Patent.

73.     For example, claim 2 of the '947 Patent recites a process for preparing cabozantinib free base.

74.     On information and belief, Handa and/or its agents may manufacture the Handa Cabozantinib Product according to the process recited in claim 2 of the '947 Patent.  For example, in Example 2 of the Handa Publication, Handa discloses a process for preparing cabozantinib lauryl sulfate from cabozantinib free base.  For example, Example 2 describes that "[l]auryl sulfate salts of…cabozantinib…may be formed in a similar manner as described in Example 1 by dissolving the…cabozantinib…in a suitable solvent…and adding sodium lauryl sulfate or an aqueous solution of sodium lauryl sulfate to the…cabozantinib…solution."

75.     On information and belief, to the extent that Handa and/or its agents manufactures the Handa Cabozantinib Product according to the process recited in Example 2 of the Handa Publication, then the manufacturing, importation, offering for sale, sale, and/or use of the Handa

Cabozantinib Product and/or its active ingredient may infringe claim 2 of the '947 patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

76.    Handa has not denied that the Handa Cabozantinib Product is manufactured using the process disclosed in Example 2 of the Handa Publication, despite being given the opportunity to do so.  Nor has Handa denied that it practices the claimed methods or that it infringes the '947 Patent.

77.    Handa LLC, the sponsor of Handa's 505(b)(2) NDA, is wholly owned by Handa Pharma, which is wholly owned by Handa Pharmaceuticals.  Handa Pharmaceuticals is headquartered and has its global research and development center in Taiwan.  Therefore, upon information and belief, Handa's Cabozantinib Product may be manufactured in Taiwan, using the process claimed in the '947 patent, and imported into the U.S., for eventual sale, offers for sale, and use in the U.S.

78.    Handa's subsequent formation of the lauryl sulfate salt and formulation into a capsule does not constitute a material change under 35 U.S. C. § 271(g)(1), nor render the product of the claimed process a trivial and nonessential component of another product under 35 U.S.C. § 271(g)(2), because it is the cabozantinib compound within the salt form (e.g., *cabozantinib* lauryl sulfate or *cabozantinib* (L)-malate) that promotes the biological/therapeutic effect in vivo.

79.    A substantial and justiciable controversy exists between the parties hereto as to the infringement of the '947 Patent.

80.    Pursuant to 28 U.S.C. § 2201, Exelixis is entitled to a declaratory judgment that Handa's imminent manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product and/or its active ingredient will infringe the '947 Patent pursuant to 35 U.S.C. § 271(g).

20

81.     Unless Handa is enjoined from infringing the '947 Patent, Exelixis will suffer irreparable injury.  Exelixis has no adequate remedy at law.

## COUNT 2: DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,365,516

82.     Exelixis incorporates each of the preceding paragraphs 1-81 as if fully set forth herein.

83.     On information and belief, upon FDA approval of 505(b)(2) NDA, Handa's importation into the U.S. of the Handa Cabozantinib Product and/or its active ingredient, and/or Handa's offering to sell, selling, and/or using the Handa Cabozantinib Product and/or its active ingredient within the U.S., prior to expiration of the '516 Patent, would infringe at least claims 23-24 of the '516 Patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

84.     On information and belief, such infringement is imminent because, among other things, Handa has notified Exelixis of the submission of its 505(b)(2) NDA, which seeks FDA approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product before the expiration of the '516 Patent.

85.     Exelixis timely gave Handa actual notice of the '516 Patent and has sought information that would assist Exelixis in confirming whether Handa's Cabozantinib Product is produced by a process within the lawful scope of at least claims 23-24 of the '516 Patent.  Handa has not provided this information.  In the absence of such information, Exelixis resorts to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm Exelixis' belief that Handa is engaged in such infringement.

86.     Based on publicly available information and Exelixis' reasonable investigation, to the extent that the Handa Cabozantinib Product is made according to the manufacturing process

described in Example 2 of the Handa Publication, then Handa may infringe at least claims 23-24 of the '516 Patent.

87.    For example, claim 24 of the '516 Patent recites a process for preparing cabozantinib free base.

88.    On information and belief, Handa and/or its agents may manufacture the Handa Cabozantinib Product according to the process recited in claim 24 of the '516 Patent. For example, in Example 2 of the Handa Publication, Handa discloses a process for preparing cabozantinib lauryl sulfate from cabozantinib free base. For example, Example 2 describes that "[l]auryl sulfate salts of…cabozantinib…may be formed in a similar manner as described in Example 1 by dissolving the…cabozantinib…in a suitable solvent…and adding sodium lauryl sulfate or an aqueous solution of sodium lauryl sulfate to the…cabozantinib…solution."

89.    On information and belief, to the extent that Handa and/or its agents manufactures the Handa Cabozantinib Product according to the process recited in Example 2 of the Handa Publication, then the manufacturing, importation, offering for sale, sale, and/or use of the Handa Cabozantinib Product and/or its active ingredient may infringe claim 24 of the '516 patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

90.    Handa has not denied that the Handa Cabozantinib Product is manufactured using the process disclosed in Example 2 of the Handa Publication, despite being given an opportunity to do so. Nor has Handa denied that it practices the claimed methods or that it infringes the '516 Patent.

91.    Handa LLC, the sponsor of Handa's 505(b)(2) NDA, is wholly owned by Handa Pharma, which is wholly owned by Handa Pharmaceuticals. Handa Pharmaceuticals is headquartered and has its global research and development center in Taiwan. Therefore, upon

22

information and belief, Handa's Cabozantinib Product may be manufactured in Taiwan, using the process claimed in the '516 Patent, and imported into the U.S., for eventual sale, offers for sale, and use in the U.S.

92.    Handa's subsequent formation of the lauryl sulfate salt and formulation into a capsule does not constitute a material change under 35 U.S. C. § 271(g)(1), nor render the product of the claimed process a trivial and nonessential component of another product under 35 U.S.C. § 271(g)(2), because it is the cabozantinib compound within the salt form (e.g., *cabozantinib* lauryl sulfate or *cabozantinib* (L)-malate) that promotes the biological/therapeutic effect in vivo.

93.    A substantial and justiciable controversy exists between the parties hereto as to the infringement of the '516 Patent.

94.    Pursuant to 28 U.S.C. § 2201, Exelixis is entitled to a declaratory judgment that Handa's imminent manufacture use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product and/or its active ingredient will infringe the '516 Patent pursuant to 35 U.S.C. § 271(g).

95.    Unless Handa is enjoined from infringing the '516 Patent, Exelixis will suffer irreparable injury.  Exelixis has no adequate remedy at law.

## COUNT 3: DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 9,969,692

96.    Exelixis incorporates each of the preceding paragraphs 1-95 as if fully set forth herein.

97.    On information and belief, upon FDA approval of 505(b)(2) NDA, Handa's importation into the U.S. of the Handa Cabozantinib Product and/or its active ingredient, and/or Handa's offering to sell, selling, and/or using the Handa Cabozantinib Product and/or its active

23

ingredient within the U.S., prior to expiration of the '692 Patent, would infringe claims 1-21 of the '692 Patent, under 35 U.S.C. § 271(g) either literally or under the doctrine of equivalents.

98.     On information and belief, such infringement is imminent because, among other things, Handa has notified Exelixis of the submission of its 505(b)(2) NDA, which seeks FDA approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product before the expiration of the '692 Patent.

99.     Exelixis timely gave Handa actual notice of the '692 Patent and has sought information that would assist Exelixis in confirming whether Handa's Cabozantinib Product is produced by a process within the lawful scope of claims 1-21 of the '692 Patent.  Handa has not provided this information.  In the absence of such information, Exelixis resorts to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm Exelixis' belief that Handa is engaged in such infringement.

100.     Based on publicly available information and Exelixis' reasonable investigation, to the extent that the Handa Cabozantinib Product is made according to the manufacturing process described in Example 2 and/or Example 41 of the Handa Publication, then Handa may infringe claims 1-21 of the '692 Patent.

101.     For example, claim 1 of the '692 Patent recites a process for preparing cabozantinib free base.  Claim 19 of the '692 Patent recites a process for preparing a salt form of cabozantinib, cabozantinib (L)-malate.

102.     On information and belief, Handa and/or its agents may manufacture the Handa Cabozantinib Product according to the process recited in claim 1 of the '692 Patent.  For example, in Example 2 of the Handa Publication, Handa discloses a process for preparing cabozantinib lauryl sulfate from cabozantinib free base.  For example, Example 2 describes that "[l]auryl sulfate

salts of…cabozantinib…may be formed in a similar manner as described in Example 1 by dissolving the…cabozantinib…in a suitable solvent…and adding sodium lauryl sulfate or an aqueous solution of sodium lauryl sulfate to the…cabozantinib…solution."

103.    On information and belief, Handa and/or its agents may alternatively manufacture the Handa Cabozantinib Product according to the process recited in claim 19 of the '692 Patent. For example, Example 41 of the Handa Publication discloses a process to make cabozantinib monolauryl sulfate by converting cabozantinib (L)-malate to cabozantinib, followed by reaction of cabozantinib with sodium lauryl sulfate.

104.    On information and belief, to the extent that Handa and/or its agents manufactures the Handa Cabozantinib Product according to the process recited in Example 2, or alternatively Example 41, of the Handa Publication, then the manufacturing, importation, offering for sale, sale, and/or use of the Handa Cabozantinib Product and/or its active ingredient may infringe at least claim 1 or claim 19 of the '692 Patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

105.    Handa has not denied that the Handa Cabozantinib Product is manufactured using the process disclosed in Example 2 and/or Example 41 of the Handa Publication, despite being given the opportunity to do so.  Nor has Handa denied that it practices the claimed methods or that it infringes the '692 Patent.

106.    Handa LLC, the sponsor of Handa's 505(b)(2) NDA, is wholly owned by Handa Pharma, which is wholly owned by Handa Pharmaceuticals.  Handa Pharmaceuticals is headquartered and has its global research and development center in Taiwan.  Therefore, upon information and belief, Handa's Cabozantinib Product may be manufactured in Taiwan, using the

process claimed in the '692 patent, and imported into the U.S., for eventual sale, offers for sale, and use in the U.S.

107. Handa's subsequent formation of the lauryl sulfate salt and formulation into a capsule does not constitute a material change under 35 U.S. C. § 271(g)(1), nor render the product of the claimed process a trivial and nonessential component of another product under 35 U.S.C. § 271(g)(2), because it is the cabozantinib compound within the salt form (e.g., *cabozantinib* lauryl sulfate or *cabozantinib* (L)-malate) that promotes the biological/therapeutic effect in vivo.

108. A substantial and justiciable controversy exists between the parties hereto as to the infringement of the '692 Patent.

109. Pursuant to 28 U.S.C. § 2201, Exelixis is entitled to a declaratory judgment that Handa's imminent manufacture use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product and/or its active ingredient will infringe the '692 Patent pursuant to 35 U.S.C. § 271(g).

110. Unless Handa is enjoined from infringing the '692 Patent, Exelixis will suffer irreparable injury. Exelixis has no adequate remedy at law.

## COUNT 4: DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 10,123,999

111. Exelixis incorporates each of the preceding paragraphs 1-110 as if fully set forth herein.

112. On information and belief, upon FDA approval of 505(b)(2) NDA, Handa's importation into the U.S. of the Handa Cabozantinib Product and/or its active ingredient, and/or Handa's offering to sell, selling, and/or using the Handa Cabozantinib Product and/or its active ingredient within the U.S., prior to expiration of the '999 Patent, would infringe claims 1-11 of the '999 Patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

113.    On information and belief, such infringement is imminent because, among other things, Handa has notified Exelixis of the submission of its 505(b)(2) NDA, which seeks FDA approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product before the expiration of the '999 Patent.

114.    Exelixis timely gave Handa actual notice of the '999 Patent and has sought information that would assist Exelixis in confirming whether Handa's Cabozantinib Product is produced by a process within the lawful scope of claims 1-11 of the '999 Patent.  Handa has not provided this information.  In the absence of such information, Exelixis resorts to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm Exelixis' belief that Handa is engaged in such infringement

115.    Based on publicly available information and Exelixis' reasonable investigation, to the extent that the Handa Cabozantinib Product is made according to the manufacturing process described in Example 2 and/or Example 41 of the Handa Publication, then Handa may infringe claims 1-11 of the '999 Patent.

116.    For example, claim 1 of the '999 Patent recites a process for preparing a compound of formula I or a pharmaceutically acceptable salt thereof, which encompasses cabozantinib free base and cabozantinib (L)-malate.

117.    On information and belief, Handa and/or its agents may manufacture the Handa Cabozantinib Product according to the process recited in claim 1 of the '999 Patent.  For example, in Example 2 of the Handa Publication, Handa discloses a process for preparing cabozantinib lauryl sulfate from cabozantinib free base.  For example, Example 2 describes that "[l]auryl sulfate salts of…cabozantinib…may be formed in a similar manner as described in Example 1 by dissolving the…cabozantinib…in a suitable solvent…and adding sodium lauryl sulfate or an

aqueous solution of sodium lauryl sulfate to the…cabozantinib…solution." Alternatively, Example 41 of the Handa Publication discloses a process to make cabozantinib monolauryl sulfate by converting cabozantinib (L)-malate to cabozantinib, followed by reaction of cabozantinib with sodium lauryl sulfate.

118. On information and belief, to the extent that Handa and/or its agents manufactures the Handa Cabozantinib Product according to the process recited in Example 2, or alternatively Example 41, of the Handa Publication, then the manufacturing, importation, offering for sale, sale, and/or use of the Handa Cabozantinib Product and/or its active ingredient may infringe claim 1 of the '999 Patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

119. Handa has not denied that the Handa Cabozantinib Product is manufactured using the process disclosed in Example 2 and/or Example 41 of the Handa Publication, despite being given the opportunity to do so. Nor has Handa denied that it practices the claimed methods or that it infringes the '999 Patent.

120. Handa LLC, the sponsor of Handa's 505(b)(2) NDA, is wholly owned by Handa Pharma, which is wholly owned by Handa Pharmaceuticals. Handa Pharmaceuticals is headquartered and has its global research and development center in Taiwan. Therefore, upon information and belief, Handa's Cabozantinib Product may be manufactured in Taiwan, using the process claimed in the '999 patent, and imported into the U.S., for eventual sale, offers for sale, and use in the U.S.

121. Handa's subsequent formation of the lauryl sulfate salt and formulation into a capsule does not constitute a material change under 35 U.S. C. § 271(g)(1), nor render the product of the claimed process a trivial and nonessential component of another product under 35 U.S.C. §

271(g)(2), because it is the cabozantinib compound within the salt form (e.g., *cabozantinib* lauryl sulfate or *cabozantinib* (L)-malate) that promotes the biological/therapeutic effect in vivo.

122.    A substantial and justiciable controversy exists between the parties hereto as to the infringement of the '999 Patent.

123.    Pursuant to 28 U.S.C. § 2201, Exelixis is entitled to a declaratory judgment that Handa's imminent manufacture use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product and/or its active ingredient will infringe the '999 Patent pursuant to 35 U.S.C. § 271(g).

124.    Unless Handa is enjoined from infringing the '999 Patent, Exelixis will suffer irreparable injury.  Exelixis has no adequate remedy at law.

## COUNT 5: DECLARATORY JUDGMENT OF INFRINGEMENT OF U.S. PATENT NO. 10,736,886

125.    Exelixis incorporates each of the preceding paragraphs 1-124 as if fully set forth herein.

126.    On information and belief, upon FDA approval of 505(b)(2) NDA, Handa's importation into the U.S. of the Handa Cabozantinib Product and/or its active ingredient, and/or Handa's offering to sell, selling, and/or using the Handa Cabozantinib Product and/or its active ingredient within the U.S., prior to expiration of the '886 Patent, would infringe claims 1-6 of the '886 Patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

127.    On information and belief, such infringement is imminent because, among other things, Handa has notified Exelixis of the submission of its 505(b)(2) NDA, which seeks FDA approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product before the expiration of the '886 Patent.

128.    Exelixis timely gave Handa actual notice of the '886 Patent and has sought information that would assist Exelixis in confirming whether Handa's Cabozantinib Product is produced by a process within the lawful scope of claims 1-6 of the '886 Patent.  Handa has not provided this information.  In the absence of such information, Exelixis resorts to the judicial process and the aid of discovery to obtain under appropriate judicial safeguards such information as is required to confirm Exelixis' belief that Handa is engaged in such infringement.

129.    Based on publicly available information and Exelixis' reasonable investigation, to the extent that the Handa Cabozantinib Product is made according to the manufacturing process described in Example 2 and/or Example 41 of the Handa Publication, then Handa may infringe claims 1-6 of the '886 Patent.

130.    For example, claim 1 of the '886 Patent recites a process for preparing cabozantinib free base.  Claim 4 of the '886 Patent recites a process for preparing the salt form of cabozantinib, cabozantinib (L)-malate.

131.    On information and belief, Handa and/or its agents may manufacture the Handa Cabozantinib Product according to the processes recited in claims 1-3 of the '886 Patent.  For example, in Example 2 of the Handa Publication, Handa discloses a process for preparing cabozantinib lauryl sulfate from cabozantinib free base.  For example, Example 2 describes that "[l]auryl sulfate salts of…cabozantinib…may be formed in a similar manner as described in Example 1 by dissolving the…cabozantinib…in a suitable solvent…and adding sodium lauryl sulfate or an aqueous solution of sodium lauryl sulfate to the…cabozantinib…solution."

132.    On information and belief, Handa and/or its agents may alternatively manufacture the Handa Cabozantinib Product according to the processes recited in claims 4-6 of the '886 Patent.  For example, Example 41 of the Handa Publication discloses a process to make cabozantinib

monolauryl sulfate by converting cabozantinib (L)-malate to cabozantinib, followed by reaction of cabozantinib with sodium lauryl sulfate.

133.    On information and belief, to the extent that Handa and/or its agents manufactures the Handa Cabozantinib Product according to the process recited in Example 2, or alternatively Example 41, of the Handa Publication, then the manufacturing, importation, offering for sale, sale, and/or use of the Handa Cabozantinib Product and/or its active ingredient may infringe claims 1-3 or claims 4-6 of the '886 Patent under 35 U.S.C. § 271(g), either literally or under the doctrine of equivalents.

134.    Handa has not denied that the Handa Cabozantinib Product is manufactured using the process disclosed in Example 2 and/or Example 41 of the Handa Publication, despite being given the opportunity to do so.  Nor has Handa denied that it practices the claimed methods or that it infringes the '886 Patent.

135.    Handa LLC, the sponsor of Handa's 505(b)(2) NDA, is wholly owned by Handa Pharma, which is wholly owned by Handa Pharmaceuticals.  Handa Pharmaceuticals is headquartered and has its global research and development center in Taiwan.  Therefore, upon information and belief, Handa's Cabozantinib Product may be manufactured in Taiwan, using the process claimed in the '886 patent, and imported into the U.S., for eventual sale, offers for sale, and use in the U.S.

136.    Handa's subsequent formation of the lauryl sulfate salt and formulation into a capsule does not constitute a material change under 35 U.S. C. § 271(g)(1), nor render the product of the claimed process a trivial and nonessential component of another product under 35 U.S.C. § 271(g)(2), because it is the cabozantinib compound within the salt form (e.g., *cabozantinib* lauryl sulfate or *cabozantinib* (L)-malate) that promotes the biological/therapeutic effect in vivo.

31

137.   A substantial and justiciable controversy exists between the parties hereto as to the infringement of the '886 Patent.

138.   Pursuant to 28 U.S.C. § 2201, Exelixis is entitled to a declaratory judgment that Handa's imminent manufacture use, offer for sale, sale, and/or importation of the Handa Cabozantinib Product and/or its active ingredient will infringe the '886 Patent pursuant to 35 U.S.C. § 271(g).

139.   Unless Handa is enjoined from infringing the '886 Patent, Exelixis will suffer irreparable injury.  Exelixis has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Exelixis asks that this Court grant the following relief:

(a)   A declaratory judgment that the claims of the Asserted Patents are not invalid and are not unenforceable, that Handa's Cabozantinib Product is manufactured according to the processes claimed in the Asserted Patents, that the product Handa manufactures according to those patented processes is not materially changed and does not become a trivial and nonessential part of Handa's Cabozantinib Product,  and that Handa's manufacture, use, offer to sell, sale, and/or importation of the Handa Cabozantinib Product and/or its active ingredient prior to the expiration of the Asserted Patents, will infringe the Asserted Patents, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(g);

(b)   An Order permanently enjoining Handa, and its affiliates, subsidiaries, and/or each of its officers, agents, servants, and employees, and those acting in privity or concert with Defendants, from manufacturing, using, offering to sell, selling, and/or importing the Handa Cabozantinib Product and/or its active ingredient until after the Asserted Patents' expiration,

32

including any extensions and/or additional periods of exclusivity to which Exelixis is or becomes entitled;

(c)   Damages or other monetary relief, including costs, fees, pre-judgment interest, and/or post-judgment interest, to Exelixis if Handa engages in commercial manufacture, use, offers to sell, sale, and/or importation into the United States of the Handa Cabozantinib Product and/or its active ingredient prior to the expiration of the Asserted Patents, including any extensions and/or additional periods of exclusivity to which Exelixis is or becomes entitled, as well as any damages or other monetary relief on the basis that this is an exceptional case; and

(d)   Such further and other relief as this Court deems proper and just.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Lisa J. Pirozzolo
Emily R. Whelan
Kevin S. Prussia
Jonathan A. Cox
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

Amy K. Wigmore
Charles T. Cox
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC  20006
(202) 663-6000

Chris M. Cherry
WILMER CUTLER PICKERING
   HALE AND DORR LLP
17th Steet Plaza
1225 17th Street, Unit 2600
Denver, CO  80202
(720) 274-3135

*/s/ Anthony D. Raucci*

Rodger D. Smith II (#3778)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@morrisnichols.com
araucci@morrisnichols.com

*Attorneys for Plaintiff Exelixis, Inc.*

33

Anna Mizzi
Alexander P. Gorka
WILMER CUTLER PICKERING
  HALE AND DORR LLP
250 Greenwich Street, 45th Floor
New York, NY  10007
(212) 230-8800

July 6, 2026